**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN W. VAN TUBERGEN, JR.**<br><br>Appellant,<br><br>v.<br><br>**BLOCKFI INC.**, *et al.*,<br><br>Appellees. | Civil Action No. 24-6404 (ZNQ)<br><br>**OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon two submissions filed by Appellant-Claimant John W. Van Tubergen, Jr. ("Appellant"): (1) a Motion for Rehearing ("Rehearing Mot.", ECF No. 18) of the Court's April 14, 2025 Opinion (ECF No. 16) and Order (ECF No. 17); and (2) a Motion to Augment Record on Appeal. (ECF No. 19.) Appellant filed an Amended Brief in Support of his Motion to Augment ("Aug. Mot.", ECF No. 20), and the BlockFi entities[1] ("Appellees" or "BlockFi") filed an Opposition. ("Aug. Opp.", ECF No. 21.)

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Bankruptcy Rule 8022(a)(4), Federal Rule of Civil Procedure 78, and Local Civil Rule 78.1. For the reasons set forth below, the Court will **DENY** Appellant's Motions.

---

[1] The Appellees are BlockFi Inc., BlockFi Trading LLC, BlockFi Lending LLC, BlockFi Wallet LLC, BlockFi Ventures LLC, BlockFi International LTD, BlockFi Investment Products LLC, BlockFi Services, Inc., and BlockFi Lending II LLC.

1

I.       **BACKGROUND AND PROCEDURAL HISTORY**

The Court assumes the parties' familiarity with the factual background of this matter and incorporates by reference the summary of the background and procedural history of this case set out in *Van Tubergen v. BlockFi, Inc.*, Civ. No. 24-6404, 2025 WL 1096061, at *1–3 (D.N.J. Apr. 14, 2025). Nevertheless, the Court will provide a brief overview of the matter and procedural history.

Appellant and BlockFi entered into a series of loan security agreements ("LSA" in the singular, or "LSAs" in the plural) in which Appellant borrowed approximately $40 million from BlockFi. (Appellate Record ("AR"), ECF No. 11-1 at 18–19.)[2] Each of the LSAs required Appellant to pledge a specified amount of cryptocurrency as collateral to secure the loan. (*Id.* at 19–25, 44.) The LSAs also provide that Appellant was to maintain a loan-to-value ratio ("LTV Ratio") such that the outstanding principal balance of each loan was less than or equal to a specified percentage of the value of the collateral. (*Id.* at 19–30, 45.) The LTV Ratio was calculated by dividing the dollar value of the loan by the dollar value of the collateral pledged. (*Id.* at 86.) If at any time Appellant failed to maintain the required LTV Ratio (usually 70%), a "Trigger Event" would occur and BlockFi was permitted to issue a margin call whereby Appellant had 72 hours to pledge additional collateral sufficient to bring the LTV Ratio equal to or less than 50%, the agreed-upon reset value. (*Id.* at 46, 278, 340, 400, 424, 428, 442.) Moreover, if the "Accelerated Maximum Loan to Value Ratio" (usually 80%) was reached, then BlockFi had the right to automatically liquidate Appellant's collateral account to bring it back to the agreed-upon reset value (usually 70%). (*Id.*) Appellant's loans reached Triggering Events on multiple occasions, and ultimately BlockFi liquidated his collateral. (*Id.* at 131, 249, 252, 263, 267, 274.)

---

[2] "AR" refers to the Appellate Record filed by BlockFi as an Appendix attached to its brief. (*See* ECF No. 11-1.) The Court cites to the record on appeal by its internal pagination.

After BlockFi filed for bankruptcy, on March 15, 2023, Appellant filed a proof of claim (Claim Number 7233) in an amount of $10 million for the "collateral that is owed to [him] from [his] loans due to false force[d] liquidations from BlockFi." (*Id.* at 31, 34.) On August 3, 2023, BlockFi filed its Seventh Omnibus Objection to Certain Claims. In part, the objection sought to modify Appellant's claim to align with BlockFi's books and records, which valued Appellant's claim as $19.07 based on his account balance in his BlockFi loan account. (*Id.* at 286.) On January 16, 2024, the Bankruptcy Court held an evidentiary hearing and thereafter issued its decision granting BlockFi's objection and fixing Appellant's claim to $19.07. (*Id.* at 272, 286.) Appellant appealed the Bankruptcy Court's decision (ECF No. 1), which this Court affirmed-in-part and remanded-in-part on April 14, 2025. Appellant now moves for a rehearing of the Court's Opinion and Order on certain legal and factual matters on appeal.

## II. SUBJECT MATTER JURISDICTION

The Court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees pursuant to 28 U.S.C. § 158(a).

## III. LEGAL STANDARD

### A. MOTION FOR REHEARING

Bankruptcy Rule 8022 provides that, "[u]nless the time is shortened or extended by order or local rule, any motion for rehearing by the district court or BAP must be filed within 14 days after a judgment on appeal is entered."[3] Fed. R. Bankr. P. 8022(a)(1). A motion for a rehearing functions like a traditional motion for reconsideration. *See In re Lau*, 684 Fed.Appx. 235, 239 (3d Cir. Mar. 27, 2017). "The test is whether (1) the court has patently misunderstood a party, (2) the court has made a decision outside the adversarial issues presented . . . by the parties; (3) the court

---

[3] BAP refers to the Bankruptcy Appellate Panel.

has made an error not of reasoning but of apprehension; or (4) there has been a controlling or significant change in the law or facts since the submission of the issue to the Court." *Id.* (citation modified). "A motion for rehearing does not permit parties to recycle cases and arguments which the District Court already rejected in rendering its original decision." *Id.*

## B. MOTION TO CORRECT OR MODIFY THE RECORD

Bankruptcy Rule 8009(e)(2) allows a district court to modify the record "[i]f anything material to either party is omitted from or misstated in the record by error or accident . . . ." Fed. R. Bankr. P. 8009(e)(2). Generally, "Rule 8009(e) provides an avenue to correct the record on appeal and to bring it in conformity with the bankruptcy court record, rather than a mechanism for supplementing the record on appeal with new information that was never considered by the bankruptcy court." *In re Salas*, Civ. No. 18-2318, 2020 WL 32567, at *2 (D.D.C. Jan. 2, 2020). The Committee Notes to Rule 8009(e) state that the rule was modeled on Federal Rule of Appellate Procedure 10(e), which provides an appellate court with the ability to correct or modify the record. *See* Fed. R. Bankr. P. 8009 Committee Notes on Rule—2014. Under Rule 10(e), an appellate court may not review new evidence not before the district court unless there are "exceptional circumstances." *Acumed LLC v. Advances Surgical Services, Inc.*, 561 F.3d 199, 226 (3d Cir. 2009). As explained by the Third Circuit, exceptional circumstances exist when: (1) the proffered addition would establish beyond any doubt the proper resolution of the pending issue; (2) remanding the case to the district court for consideration of the additional material would be contrary to the interests of justice and the efficient use of judicial resources; and (3) whether the appeal arose in the context of a habeas corpus action. *Id.*

4

## IV. DISCUSSION

The Court will first address Appellant's Motion to Correct or Modify the Record because, if granted, that evidence would necessarily bear on the Court's analysis of whether it should grant Appellant's Motion for a Rehearing.

### A. MOTION TO AUGMENT THE RECORD

Appellant seeks to supplement the record with three new pieces of evidence: (a) a Client Loan Handbook (the "Handbook") provided by BlockFi to Appellant; (b) an accompanying email from Ms. Florencia Marquez; and (c) a notice issued by BlockFi. (Aug. Mot. at 2.) BlockFi argues that the Court should deny the Modification Motion because (1) Rule 8009 does not permit supplementation of new evidence; (2) the evidence is not material; and (3) exceptional circumstances do not exist that permit supplementation. (Aug. Opp. at 4–9.) Given that none of these pieces of evidence were before the Bankruptcy Court, this Court may only consider them if "exceptional circumstances" are present. *See Acumed LLC*, 561 F.3d at 226.

According to Appellant, "the Handbook was issued to customers when onboarding to explain each LSA in more detail." (Aug. Mot. at 3.) The Handbook, as described by Appellant, "details limitations on liquidation authority, including specific conditions under which assets may be sold." (*Id.*) As relevant here, the Handbook provides guidelines and examples of what happens during margin calls. (*Id.*) These guidelines and scenarios for margin calls in the Handbook are, according to Appellant, helpful to his argument that BlockFi liquidated collateral from his account beyond what was necessary to establish the "Required LTV" under the LSAs. (*Id.* at 6.) Moreover, Appellant argues the Handbook should be deemed a "Related Document" under section 4 of the LSAs, which provides that "[t]he representations and warranties set forth in this agreement and

5

the other Related Documents are true and correct in all material respects." (*Id.* at 7.) In other words, Appellant contends the Handbook, and its terms, are a part of the LSAs.

BlockFi argues that the Handbook is not a "Related Document" under the LSAs. (Aug. Opp. at 6.) Specifically, BlockFi asserts that "the LSAs define Related Documents at paragraph 2 to mean 'agreements, certificates, instruments, guaranties, authorizations or other documents' that are 'executed' by the parties, and paragraph 4(a) expressly requires electronic execution of all Related Documents." (*Id.*). BlockFi thus argues that because the Handbook was not "executed" by the parties in accordance with the terms of the LSAs, the terms of the Handbook are excluded from the parties' agreements. The Court agrees.

The LSAs provide the following:

> This Agreement and the other Related Documents constitute the entire agreement among the parties relating to the subject matter hereof and thereof and supersede any and all previous agreements and understandings, oral or written, relating to the subject matter hereof and thereof.

(AR at 51.) "Related Documents" are defined as those that are "executed" by the parties (AR at 41), and paragraph 4(a) requires "Related Documents" to be executed electronically (AR at 43). Appellant does not argue or suggest that the Handbook was "executed" by the parties, and only baldly asserts that it should be considered a "Related Document" without providing any sort of explanation as to why that should be the case. Given that the Handbook was not electronically executed, its terms are of no consequence and have no bearing on the Appeal. The accompanying email from Ms. Florencia Marquez is irrelevant for the same reason.

Appellant's final document is a notice he received from BlockFi that informed him that the value of his collateral had dropped and that the occurrence of a Trigger Event was imminent. (ECF No. 19-5.) According to Appellant, the notice shows what the "permissible liquidation percentages" were in the event of a Margin Call and thus support his argument on Appeal that

BlockFi liquidated his account in an excessive amount. (Aug. Mot. at 6–7.) Specifically, the notice states that if the LTV reached 70%, Appellant would have 72 hours to bring his loan back to an LTV of 50% or else BlockFi would sell enough collateral to reset the LTV to 50%. (ECF No. 19-5.) The notice further states that if the LTV reached 80%, BlockFi would automatically sell Appellant's collateral to bring the loan back to a 70% LTV. (*Id.*)

Nothing in the notice is new information. In fact, this information (i.e., the agreed-upon reset value) was already considered by the Bankruptcy Court, which ultimately found that Appellant had not "established any wrongful actions by BlockFi in the manner in which the Collateral was liquidated." (AR at 284.) This Court subsequently considered that information and affirmed the Bankruptcy Court's finding. (Opinion at 3, 16.) Thus, Appellant has not shown any "exceptional circumstances" that would warrant modifying or correcting the record at this time. Appellant's Motion to Augment the Record will therefore be **DENIED**.

### B.  MOTION FOR A REHEARING

Appellant seeks a rehearing related to four issues: (1) whether the Bankruptcy Court erred by failing to find or consider actual market value for purposes of LTV calculations and determining whether "Trigger Events" under the LSAs had in fact transpired prior to the liquidations conducted by BlockFi; (2) whether the Bankruptcy Court erred by permitting BlockFi to have liquidated collateral beyond what was necessary to establish the Required LTV under the LSAs; (3) whether the Bankruptcy Court erred by not requiring BlockFi to produce the pre-liquidation notices required under the LSAs; and (4) whether this Court may have overlooked certain evidence. (Rehearing Mot. at 4–8.) The Court will address each of these arguments below.

#### 1.  Actual Market Value and Triggering Events

Appellant first argues that the Court misconstrued his underlying argument related to the LTV calculations and "Trigger Events." (Rehearing Mot. at 4.) According to Appellant, he did

not argue that the Bankruptcy Court was "obligated to use the Gemini data" to calculate the LTV Ratio or "center[] his argument against the methodology employed by BlockFi." (*Id.* at 5.) Rather, Appellant argued that "BlockFi did not show a basis or benchmark(s) for its purported data, and thus within the context of a legal dispute wherein specific LTV thresholds are dispositive of the legal right to liquidate, Appellant's LTV calculations should have governed as being founded upon the best evidence." (*Id.*) Whether Appellant argued that the Bankruptcy Court was obligated to use the Gemini data or not is of no consequence. The Bankruptcy Court specifically found that "BlockFi explained the basis for its calculations" and that its methodology was not unreasonable. (AR at 278–79.) Insofar as Appellant argues that "BlockFi did not show a basis or benchmark(s) for its purported data," that position was already considered and rejected by the Court. (Opinion at 7–8.)

2. Excessive Liquidation

Appellant next argues that the Court erred in finding that "Appellant cites no instances when BlockFi purportedly liquidated more than needed." (Rehearing Mot. at 6.) According to Appellant, he cited several instances in which excessive liquidation occurred, and the Court's finding otherwise is inaccurate. (*Id.*) Specifically, Appellant cites to a Collateral Loss Breakdown Chart, which he claims show the percentages by which his collateral accounts were liquidated and the ratio of the fair market value of the collateral sold relative to the pre-liquidation outstanding loan balance. (*Id.* at 6–7.) Even so, the Court has already found that the LSAs do not restrict the amount of collateral that BlockFi could liquidate to reach the agreed-upon reset values. (Opinion at 16.) Rather, the LSAs permitted BlockFi to liquidate Appellant's accounts in "an amount as necessary" to ensure that they were equal to or less than the agreed-upon reset value. In that sense, Appellant has not provided sufficient evidence to demonstrate that BlockFi liquidated more than it was able to pursuant to the terms of the LSAs. Moreover, there is evidence in the Appellate

8

Record that demonstrates BlockFi only liquidated enough collateral to reduce the LTV Ratio to the agreed-upon percentage. (AR at 159–64.) Accordingly, Appellant's motion for a rehearing on this issue is also denied.

### 3. Pre-Liquidation Notices

Appellant's third argument is similarly unpersuasive and approaches frivolous. Here, Appellant argues that the Court "misapprehended Appellant's arguments on the issue" of whether BlockFi was required to produce pre-liquidation notices. (Rehearing Mot. at 7.) Specifically, he asserts that the Court "framed Appellant's arguments as one under public policy," whereas "Appellant's arguments in the main were founded on terms of the LSAs that required the notices in dispute." (*Id.*) Even a cursory reading of the Court's Opinion demonstrates that is not true. Rather, the Court expressly based its Opinion on the Bankruptcy Court's interpretation of the LSAs and held that the Bankruptcy Court's interpretation was consistent with the "plain terms" of the agreements. (Opinion at 17–18.) The Court finds no reason to rehash its prior Opinion here.[4]

### 4. Overlooked Evidence

Appellant's final argument is that the Court overlooked evidence in the Appellate Record that shows he was assured his collateral was safe from liquidation. (Rehearing Mot. at 8.) Again, Appellant's argument misses the mark. As the Court previously found, the Bankruptcy Court did not err in failing to credit Appellant's belief that his collateral was safe from liquidation. (Opinion at 20.) Indeed, the Court previously reviewed the terms of the LSAs and the Bankruptcy Court's findings and found that Appellant's argument that BlockFi assured him his collateral was safe

---

[4] Appellant appears to argue for the first time that the LSAs may have violated his due process rights. (Rehearing Mot. at 8.) But it is not clear to the Court how a party complying with the terms of a contractual agreement would be violating the Due Process Clause, and Appellant has not provided any authority to suggest otherwise.

from liquidation was without merit.  (Opinion at 19–20.)  As such, Appellant has also failed to demonstrate that a rehearing is required for this issue.[5]

## V. CONCLUSION

For the reasons stated above, Appellant's Motions (ECF Nos. 18, 19) will be **DENIED**.  An appropriate Order will follow.

Date: November 12, 2025

                                             s/ Zahid N. Quraishi
                                             **ZAHID N. QURAISHI**
                                             **UNITED STATES DISTRICT JUDGE**

---

[5] Appellant also suggests that the Court failed to look at evidence that supported his argument that the liquidations were excessive.  (Rehearing Mot. at 8.)  For the reasons already discussed, that argument is without merit.